UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PAUL JOHN BOJERSKI,

      Petitioner,

v.                                                                                      Case No: 6:25-cv-2052-JSS-RMN

SECRETARY OF THE UNITED
STATES DEPARTMENT OF
HOMELAND SECURITY and
FIELD OFFICE DIRECTOR OF
THE UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT IN MIAMI,
FLORIDA,

      Respondents.

_____/

## **ORDER**

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241.  (Dkt. 1.)  He requests his release from the custody of the United States Immigration and Customs Enforcement (ICE).  (*Id.* at 1.)  Respondents move to dismiss the petition for lack of subject matter jurisdiction and failure to state a claim, (*see* Dkts. 11, 14, 18), and Petitioner opposes the motion, (*see* Dkt. 15).  Upon consideration, for the reasons outlined below, the court denies the motion to dismiss.

## **BACKGROUND**

Petitioner reports that he "was born in a displaced persons camp located in Germany" to Polish nationals "following the end of hostilities relating to Wor[ld] War II."  (Dkt. 1 at 3.)  Allegedly, Petitioner arrived in the United States on January 29,

1952, under the name Zbigniew Janusz Bojerski, and "was admitted to the United States as a lawful permanent resident on th[e] same date." (*Id.* at 3–4.)  On June 21, 1967, the Immigration and Naturalization Service (INS) issued a Form I-221 order to show cause against Petitioner due to his criminal history.  (*Id.* at 4; Dkt. 1-1 at 2.)  On August 13, 1968, an immigration judge (then known as a special inquiry officer) ordered Petitioner deported to Poland, or, in the alternative, West Germany.  (Dkt. 1 at 4; Dkt. 1-1 at 4–10.)  Petitioner appealed, and the Board of Immigration Appeals (BIA) dismissed the appeal on December 27, 1968.  (Dkt. 1 at 4; Dkt. 1-1 at 11–13.)  Petitioner "concedes that the [BIA]'s December 27, 1968 order was a final 'order of deportation'" within the meaning of 8 U.S.C. § 1101(a)(47).  (Dkt. 1 at 4.)  According to the petition, the INS was unable to execute the deportation order "because neither Poland nor West Germany would issue a travel document to the INS such that Petitioner could board a common carrier."  (*Id.* at 5.)  Petitioner states that as a result, in 1969, the INS issued to him a Form I-220B order of supervision ("OSUP").  (*Id.*)

Petitioner reports that on August 14, 1988, Petitioner married Gayle Burke, a natural born United States citizen.  (*Id.* at 6.)  Purportedly, for their honeymoon, they traveled to Niagara Falls in Ontario, Canada, entering Canada through Buffalo, New York.  (*Id.*; Dkt. 1-4 at 3; Dkt. 1-5 at 2.)  Petitioner alleges that upon their return, they reentered the United States "at or near Detroit, Michigan," "presented themselves for inspection upon arrival," and "encountered [no] issue returning to the United States."  (Dkt. 1 at 6; *see* Dkt. 1-4 at 3.)  Reportedly, they reentered the United States through Detroit so they could travel to visit Petitioner's sister, who lived in Ohio.  (Dkt. 1-4 at

3; Dkt. 1-5 at 2.)    According to Petitioner, they relayed this explanation to the immigration officer, and their "admission into Canada and [their] return to the United States involved a conversation [with immigration officials] of no more than five . . . minutes each, at most." (Dkt. 1-4 at 3; *see* Dkt. 1-5 at 2.)  Petitioner asserts that he does not recall "being asked anything about [their] immigration statuses in the United States." (Dkt. 1-4 at 3.)

Allegedly, in summer 1992, Petitioner and his wife again left the United States, this time for a day trip to Tijuana, Mexico, as part of a visit to California to meet with his wife's son from a prior relationship.  (Dkt. 1 at 7; Dkt. 1-4 at 3; Dkt. 1-5 at 3–4.) Petitioner states that he and his wife walked to Mexico from San Ysidro, California, and returned the same way.  (Dkt. 1 at 7.)  According to the petition, upon returning through the international checkpoint, they again "presented themselves for inspection upon arrival" and "encountered [no] issue returning to the United States."  (*Id.*; *see* Dkt. 1-4 at 4; Dkt. 1-5 at 3.)  Petitioner asserts that once at the checkpoint, they "got in the line for [individuals] who reside in the United States," and he "do[es] not recall there being much of any conversation with an immigration inspector regarding either of [their] immigration statuses in the United States." (Dkt. 1-4 at 4; *see* Dkt. 1-5 at 3.) Petitioner further asserts that both he and his wife "had valid Florida [d]river['s] [l]icenses at the time and[,] if asked, . . . would have provided th[o]se identification documents to an inspector." (Dkt. 1-4 at 4.)

Petitioner alleges that in 2008, an ICE representative from the Orlando, Florida Office of Enforcement and Removal Operations (ERO) "contacted [him] regarding his

immigration status in the United States." (Dkt. 1 at 8.)  Petitioner reported to the ICE office in Orlando, Florida, on June 4, 2008, as summoned, where he was arrested by the Fugitive Operations Unit; he was thereafter released on another OSUP.  (Dkt. 1-2 at 3; *see* Dkt. 1-4 at 4.)

For reasons not explained by any party, a new OSUP was issued to Petitioner on June 15, 2010. (Dkt. 1-11 at 2, 4–5; *see* Dkt. 1 at 8.)  Purportedly, Petitioner "has been reporting on" that OSUP, with his "most recent call-in appointment" occurring on July 24, 2025.  (Dkt. 1 at 8; *see* Dkt. 1-11 at 2–3.)  During that call-in, Petitioner states, "he was informed that he would be required to appear again on or about October 30, 2025," and was issued a Form G-56 call-in letter instructing him "to present travel arrangements and travel doc[]uments . . . to depart the United States due to [his] removal order."  (Dkt. 1 at 8; *see* Dkt. 1-12 at 2.)

On October 24, 2025, Petitioner filed the present petition for writ of habeas corpus under section 2241, in which he argues that any attempt by Respondents "to continue to detain him, or to otherwise make any attempt to execute a non[]existent 'order of deportation'" violates his rights under the Fourth and Fifth Amendments. (Dkt. 1 at 9–10.)   Petitioner seeks his release from ICE custody, along with a declaration "that [he] is currently detained in the custody of Respondents in violation of the Constitution and laws of the United States and that [he] is being detained indefinitely without any means of recourse before any administrative agency,"  "a declaratory judgment concluding that [he] is not currently subject to any 'order of deportation' as defined" by 8 U.S.C. § 1101(a)(47), an award of costs and reasonable

attorney fees, and any "such further relief as the [c]ourt deems just and proper." (Dkt. 1 at 11.)

## APPLICABLE STANDARDS

Federal courts are courts of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). The party seeking to invoke the court's jurisdiction (*i.e.*, Petitioner) "has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085–86 (11th Cir. 2010) (citing Fed. R. Civ. P. 8(a)(1) and *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)).

"[M]otions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)). "Facial challenges to subject matter jurisdiction are based solely on the allegations" in the petition, and when considering a facial challenge, "the court must . . . take the [petition]'s allegations as true." *Id.* "However, where a [respondent] raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence." *Id.*; *accord Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230

(11th Cir. 2021).

When ruling on a motion to dismiss for failure to state a claim, the court accepts the well-pleaded factual allegations in the petition as true and draws reasonable inferences from these allegations in the petitioner's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lotierzo v. A Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). A petitioner cannot put forth solely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Instead, the petition "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* (quotation omitted). A petition is "plausible on its face when it contains sufficient facts to support a reasonable inference that the [respondent] is liable for the misconduct alleged." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678).

Under 28 U.S.C. § 2241(a), "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts[,] and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A court may issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 is a proper vehicle through which to challenge the constitutionality of a noncitizen's detention. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

## ANALYSIS

The court first addresses Respondents' challenges concerning subject matter

jurisdiction. The court then turns to Respondents' arguments that the petition fails to state a claim for relief.

## A. Subject Matter Jurisdiction

It appears, based on the October 24, 2025 filing date, that Petitioner submitted the present petition while complying with the terms of the OSUP. Further, section 2241's "in custody" requirement does not require physical custody; it is also satisfied where "significant restraints" have been placed on a petitioner's liberty. *See Jones v. Cunningham*, 371 U.S. 236, 242 (1963). A petitioner challenging the legality or conditions of his OSUP is therefore "in custody" for purposes of section 2241. *See, e.g.*, *Alvarez v. Holder*, 454 F. App'x 769, 772 (11th Cir. 2011) (holding that jurisdiction existed to consider the petitioner's OSUP conditions under section 2241); *Devitri v. Cronen*, 290 F. Supp. 3d 86, 90 (D. Mass. 2017) (citing *Alvarez*, 454 F. App'x at 772–73; *Ali v. Napolitano*, No. 12–11384–FDS, 2013 WL 3929788 (D. Mass. July 26, 2013). In addition, Respondents represent that "[o]n October 30, 2025, Petitioner was detained for the purpose of effecting his removal from the United States." (Dkt. 11 at 2; *see* Dkt. 11-2 at 1–2.) Thus, Petitioner is now in Respondents' physical custody pending the outcome of this petition. Indeed, Respondents do not argue that Petitioner was not "in custody" but instead argue that this court lacks jurisdiction over Petitioner's claims under 8 U.S.C. § 1252(g) and 1252(b)(9) of the Immigration and Nationality Act (INA).

Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision . . . to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). This section—"commonly known as the 'zipper clause'—'bars review of claims arising from actions or proceedings brought to remove [a noncitizen].'" *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020) (cleaned up) (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020)); *see also Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) ("The language of section 1252(b)(9) unambiguously divests all courts of habeas jurisdiction over cases that fall within its purview."). Respondents contend that because "Petitioner effectively challenges ICE's execution of his final order of deportation, [the] zipper clause has been triggered and judicial review in this [c]ourt is inappropriate and contrary to the statutory scheme." (Dkt. 11 at 6.)

Respondents read the zipper clause too broadly. The scope of the provision is narrow, and it "is not intended to cut off claims that have a tangential relationship with pending removal proceedings." *Canal A Media*, 964 F.3d at 1257 (citing *Regents*, 591 U.S. at 19, and *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016)). "[T]he zipper clause 'does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined.'" *Id.* (quoting *Regents*, 591 U.S. at 19). The

Eleventh Circuit has determined that where a petitioner challenges his immigration-related "detention and pending removal [as] unconstitutional because he is not subject to an order of removal," he challenges "the very existence of an order of removal [and] does not seek 'review of an order of removal.'" *Madu*, 470 F.3d at 1366. Here, Petitioner does not, in any way, ask the court to review the BIA's December 27, 1968 final order of deportation. He does not challenge the validity of that order or Respondents' ability to deport him under that order at the time of its issuance. Rather, Petitioner asserts that the order was already executed due to his above-described self-deportation to Canada, Mexico, or both. Thus, no order of deportation currently exists under which Petitioner may be held in custody. As determined in *Madu*, 470 F.3d at 1366, this type of argument does not "ask[] for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *See Canal A Media*, 964 F.3d at 1257 (quoting *Regents*, 591 U.S. at 19). Thus, section 1252(b)(9) does not bar review of the present section 2241 petition.

Respondents further maintain that section 1252(g) bars the court from considering Petitioner's claims. Pursuant to section 1252(g), a "[f]ederal court[] lacks subject[ ]matter jurisdiction over 'any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the [a]ttorney [g]eneral to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen].'" *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) (quoting 8 U.S.C. § 1252(g)). These activities "represent the initiation or prosecution of various stages in the deportation process"—discretionary activities of the executive branch

which Congress has chosen to protect from judicial review. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). Respondents contend that because "Petitioner has been detained for the purpose of executing a final, executable deportation order," section 1252(g) precludes this court's consideration of Petitioner's claims.

As the Eleventh Circuit has explained, section 1252(g) "bars [a] court[] from reviewing certain exercises of discretion by the attorney general," but "it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions." *Madu*, 470 F.3d at 1368 (quoting *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 485 n.9). Here, Petitioner "does not challenge [Respondents'] exercise of discretion" but "brings a constitutional challenge to his detention and impending removal." *Id.* Therefore, section 1252(g) does not preclude this court from considering the petition.

## B. Failure to State a Claim

Petitioner alleges that he is currently detained in violation of his Fourth and Fifth Amendment rights. (*See* Dkt. 1.) Although Petitioner is not a United States citizen, he is entitled to these constitutional protections. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))); *Zadvydas*, 533 U.S. at 690 ("It is well established that certain constitutional protections available to persons inside the United States are

- 10 -

unavailable to [noncitizens] outside of our geographic borders.  But once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." (citations omitted)); *INS v. Delgado*, 466 U.S. 210 (1984) (analyzing INS questioning of employees at worksites under the Fourth Amendment); *Landon v. Plasencia*, 459 U.S. 21, 33 (1982) ("[A] continuously present permanent resident [noncitizen] has a right to due process [when threatened with deportation].").

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const., amend IV.  The Fourth Amendment "applies equally to seizures of persons and to seizures of property" and makes unlawful unreasonable warrantless detentions and arrests.  *See, e.g.*, *Payton v. New York*, 445 U.S. 573, 585–86 (1980).  "The touchstone of the Fourth Amendment is reasonableness," *United States v. Knights*, 534 U.S. 112, 118 (2001), which "is generally assessed by carefully weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion,'" *County of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017) (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)).  Overall, "reasonableness . . . is evaluated by looking at the totality of the circumstances." *Case v. Montana*, 146 S. Ct. 500, 508 (2026) (quotation omitted).

The due process protections of the Fifth Amendment involve both procedural

and substantive rights. Regarding procedural due process, "there can be no doubt that at a minimum [the words of the Due Process Clause] require that deprivation of life, liberty[,] or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*; *see Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong*, 380 U.S. at 552)).

"[T]he Due Process Clause [also] contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (quotation omitted). Substantive due process prevents the government from subjecting an individual to an action that "shocks the conscience," otherwise "offend[s] a sense of justice," *Rochin v. California*, 342 U.S. 165, 172–73 (1952) (quotation omitted), or intrudes on rights "[i]mplicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 324 (1937). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action," *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992), and "civil commitment for any

- 12 -

purpose constitutes a significant deprivation of liberty that requires due process protection," *Addington v. Texas*, 441 U.S. 418, 425 (1979).

Overall, "the Fifth Amendment . . . forbids the [g]overnment to deprive [noncitizens], who have sufficient ties that go with permanent residence, of substantial liberty, particularly without procedural safeguards." *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 357 (S.D.N.Y. 2019) (citing *Zadvydas*, 533 U.S. at 690). "It is akin to how citizens cannot be arbitrarily detained without robust mechanistic safeguards, such as those connected with criminal trials and convictions." *Id.*

"Deportation orders are self-executing orders, not dependent upon judicial enforcement." *Stone v. INS*, 514 U.S. 386, 398 (1995), *abrogated on mother grounds by Riley v. Bondi*, 606 U.S. 259, 261 (2025). Under 8 U.S.C. § 1101(g), "any [noncitizen] ordered deported or removed . . . who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed." 8 U.S.C. § 1101(g); *see also* 8 C.F.R. § 1241.7 (stating as the general rule for self-removal that any noncitizen "who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed").

After a noncitizen is deported (voluntarily or involuntarily) "while under an order of exclusion, deportation, or removal," if the noncitizen thereafter illegally reenters the United States, the noncitizen may again be removed "by reinstating the prior order." 8 C.F.R. § 241.8(a). "If an officer determines that [a noncitizen] is

subject to removal under [section 241.8(a)], he or she shall provide the [noncitizen] with written notice of his or her determination." 8 C.F.R. § 241.8(b). "The officer shall advise the [noncitizen] that he or she may make a written or oral statement contesting the determination[,] . . . shall allow the [noncitizen] to do so [if the noncitizen so desires,] and shall consider whether the [noncitizen]'s statement warrants reconsideration of the determination." *Id.*

Petitioner alleges that he is a noncitizen to whom 8 U.S.C. § 1101(a)(3) applies, that he was subject to a December 27, 1968 final order of deportation within the meaning of 8 U.S.C. § 1101(a)(47), and that he voluntarily left the United States twice—once to Canada in 1988 and once to Mexico in 1992. (Dkt. 1 at 3–4, 6–7.) He further alleges that he is in Respondents' custody and has no remedy available to him beyond his habeas petition. (*Id.* at 10.) Respondents do not assert as a defense the reinstatement of the deportation order under section 241.8(a),[1] and Petitioner alleges that he reentered the United States through designated checkpoints that involved interactions with immigrations officials, after which he was permitted to reenter the country. Additionally, Petitioner attaches a document from the Department of Homeland Security to the petition, and the document records his 1969 deportation order and indicates that he claimed to have left the country twice since the order was

---

[1] Although Petitioner alleges that he "can provide no written documentation issued by the INS or an INS inspector that would corroborate his claim that he lawfully returned to the United States" on either occasion, (Dkt. 1 at 7), this fact is not dispositive. If Petitioner reentered the United States unlawfully, section 241.8(a) requires Respondents to reinstate the prior deportation order and notify Petitioner in writing of the reinstatement.

issued and that he was issued an OSUP after his May 2008 encounter and arrest. The document does not suggest that the 1969 deportation order was reinstated. (*See* Dkt. 1-2 at 3.) Nor does the Department of Homeland Security's personal report record attached to the petition describe any reinstatement of the original deportation order or any notice of such being provided to Petitioner (despite describing the service on Petitioner of other immigration-related documents). (*See* Dkt. 1-11 at 2–3.)

When the court accepts the petition's well-pleaded factual allegations as true and construes them in the light most favorable to Petitioner, the petition sufficiently states a claim that Respondents are holding Petitioner in custody to deport him despite the lack of a pending deportation order. Petitioner also adequately pleads that his habeas petition is his sole means of challenging the legality of his custody and that his Fourth and Fifth Amendment rights are being violated.

## CONCLUSION

Accordingly:

1. Respondents' motion to dismiss (Dkt. 11) is **DENIED**.

2. On or before March 12, 2026, Respondents shall file a response to the petition (Dkt. 1) showing cause why the petition should not be granted.

**ORDERED** in Orlando, Florida, on February 26, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

- 15 -

Copies furnished to:

Counsel of Record